[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas Count Court of Common Pleas, Juvenile Division, which granted permanent custody of Chianna C., born August 6, 1999, and Sierra C., born August 27, 2000, to appellee, Lucas County Children Services ("LCCS"), and terminated the parental rights of appellants Pamela C. and Brad F. From that judgment, appellants have raised the following assignments of error:
 "I. THE TRIAL COURT ERRED IN FINDING THAT THE LUCAS COUNTY CHILDREN SERVICES BOARD HAD MADE A GOOD FAITH EFFORT TO REUNIFY THE MINOR CHILDREN WITH APPELLANTS.
 "II. THE TRIAL COURT ERRED IN GRANTING STATE'S MOTION FOR PERMANENT CUSTODY AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO GRANT IT."
On October 16, 2000, the lower court issued an ex parte order granting LCCS emergency shelter care of Chianna C. and Sierra C., the natural children of Pamela C. and Brad F. The court issued its order based on information provided by LCCS that Pamela C. was bipolar, had a history of alcohol abuse, was homeless and transient and was "on the run" with the children. Thereafter, LCCS filed a complaint in dependency and neglect seeking temporary custody of the children. The complaint alleged that Pamela C. has a history of mental illness and alcohol abuse, that she drank alcohol for the first five months of her pregnancy with Sierra and that she has refused to take her medication, prescribed to treat her bipolar disorder, for approximately one year. The complaint revealed that prior to the ex parte order, Pamela C. had been heard yelling profanities, telling her landlord that she was going to kill herself and her children and threatening to throw her children out of a third floor window with the furniture. She then did throw furniture out of the window. The complaint further alleged that neighbors witnessed
Pamela C. throw a carrier, with Sierra in it, across the floor, and that at one time Pamela C. thought Chianna was a demon. After Pamela C.'s sister prayed over Chianna, Pamela then thought Chianna was okay. When Pamela and Brad learned that LCCS was seeking to take their children, they took off with the children and were whereabouts unknown. The home that they left, however, was unfit for human habitation at the time of their evacuation. The complaint alleged that the home was filthy, and that there was garbage, food, dirty diapers, broken glass and sharp metal objects scattered about the floor. In addition, there were holes in the walls and doors that were not there when they moved in. Finally, the complaint alleged that there is ongoing domestic violence between Pamela and Brad and that Pamela has been reported to have lost custody of three other children.
Subsequently, temporary custody of the children was awarded to LCCS, although the location of the family was still unknown. On or about November 14, 2000, the family was located in Flint, Michigan and the children were taken into custody by LCCS. At that time, the girls were dirty, sick and hungry. Shortly thereafter, the girls were placed with their foster parents, Michelle and Scott C., and a case plan was filed with reunification as the goal. Under the plan, Pamela and Brad were to undergo drug and alcohol assessments and diagnostic assessments; obtain and maintain adequate and appropriate housing; attend domestic violence classes and, if recommended, anger management classes; visit the girls on a regular basis; and pay child support. In addition, Pamela was to cooperate with mental health services, meet regularly with a counselor and take medications if prescribed, and Brad was to establish paternity. Pamela and Brad, however, remained in Flint, Michigan for several months and did not engage in services for reunification. On January 4, 2001, after a hearing, the girls were adjudicated dependent and neglected and temporary custody of them was continued in LCCS.
In March 2001, Pamela and Brad returned to Toledo and began to partake in some services in their attempt to regain custody of their children. They participated in parenting and anger management classes and underwent drug and alcohol assessments. In addition, Brad established his paternity of the girls. Nevertheless, Pamela only attended thirty and Brad only attended thirty-one of fifty scheduled visits with the girls, Pamela refused to follow through with a psychiatric evaluation and refused to take medication, Brad did not complete anger management classes, and both Pamela and Brad consistently blamed LCCS and the Ohio system for taking their children, refusing to recognize their responsibility in the matter.
On July 19, 2001, LCCS filed a motion for permanent custody of Chianna and Sierra. In the complaint, LCCS alleged that Pamela and Brad had failed to successfully complete the case plan services offered, had only sporadically visited the girls and had not kept the LCCS caseworker informed of their whereabouts. In addition, the complaint alleged that Chianna and Sierra had special needs. Although the girls were receiving services through Early Intervention, the complaint alleged that they were of tender years and in need of a permanent placement.
The case proceeded to a dispositional hearing on December 17 and 18, 2001, at which the following witnesses testified: Kelly Grover, a social worker at Harbor Behavioral Health; Michelle Kermec, a psychoeducator at Harbor Behavioral Health; Michelle C., the foster mother of Chianna and Sierra; Tracy Bruno, an early intervention specialist with the Lucas County Board of MRDD; Amy Galvan, the LCCS caseworker assigned to this case; Michelle Bryant, a chemical dependency counselor at Fresh Attitude; Pamela C. and Brad F. These witnesses revealed the following.
After the girls were removed from appellants' custody, appellants remained in Flint, Michigan until March 2001. In the interim, they did return to Toledo on at least one occasion, in December 2000, at which time they met with Amy Galvan, the LCCS caseworker assigned to their case. At that meeting, Galvan discussed case plan services that they would have to complete to be reunified with their children. She also discussed visitation with them and told them that LCCS would provide bus fare from Flint to Toledo for the visits. Appellants did attend a visitation with the girls on December 21, 2000 but, thereafter, did not visit with the girls until their return to Toledo in March 2001. Once they returned to Toledo, appellants did not consistently keep their visitation appointments. In addition, they exhibited inappropriate parenting during those visits. At their first visit in March 2001, when Sierra was seven months old and Chianna was nineteen months old, appellants brought the girls barbeque to eat. Galvan had to step in to make sure appellants were not feeding it to the children. After that same visit, Chianna had marks on her forehead and neck. As a result, Pamela was no longer permitted to change the girls' diapers. Subsequently, at a visit in July appellants brought the girls firecrackers and at a visit in October appellants brought the girls jawbreakers. When questioned about the firecrackers at the hearing below, Pamela stated that she remembered firecrackers from her childhood and simply wanted her girls to enjoy them as she had. She did not seem to understand that children of the ages of Chianna and Sierra could not safely use firecrackers. In addition to these problems, Brad came to one visitation smelling of alcohol and Pamela had to be escorted out of a visitation when she threatened to take the children from the foster parents.
The case plan required Pamela to obtain a diagnostic assessment, which she did on July 2, 2001, and to follow through with the recommendations. As a result of that assessment, it was recommended that Pamela obtain a psychiatric evaluation and take medication. She refused both, saying that she did not like the way the medication made her feel. She did, however, then say that she would take the medication to get her children back. It was also recommended that she attend group therapy sessions for depression but she did not follow through.
Both Pamela and Brad were required to obtain an alcohol and drug assessment. The assessments were scheduled on several occasions but appellants canceled the appointments. Finally, when they were at LCCS for an administrative review, the caseworker arranged for appellants to have the assessment immediately after the review and appellants complied. After this initial assessment, and despite information that Pamela drank during the first five months of her pregnancy with Sierra, no recommendations were made regarding appellants. However, after
Brad arrived at a visitation smelling of alcohol, LCCS asked that he be reassessed. He never followed through with an additional assessment. In addition, Pamela was charged with disorderly conduct intoxication in July 2001.
In addition to the above, Pamela and Brad were required to complete parenting and anger management classes and Pamela was required to attend coping skills group therapy. Both appellants completed the parenting class and Pamela completed the anger management class. Brad attended all but one of the anger management classes and Pamela only attended three coping skills group therapy sessions. Nevertheless, they frequently came late to the classes and left early. In addition, they tended to blame LCCS and the Ohio system for their predicament and refused to accept any responsibility for it. In sum, they blamed everyone but themselves for it and lacked insight into why LCCS had taken custody of their children. Moreover, an incident of domestic violence in October 2001 demonstrated that neither party had gained any insight into how to deal with stressful situations and anger.
In addition to the above, Michelle C., the girls' foster mother, testified at the hearing below. Michelle first described the girls as they were when she and Scott first took them in. Chianna, who was then fifteen months old, did not know how to feed herself and would only drink from a bottle. Consequently, she drooled excessively and had poor motor functions. She also did not talk, cried a lot, had an inner and outer ear infection and would not stay in her crib. Sierra, who was then three months old, was fairly typical for a three month old; however, she had a chlamydia infection in her eye, clenched her fists abnormally until she was about eleven months old, and did not start to crawl until she was eleven to twelve months old. Regarding appellants' visits with the girls, Michelle stated that on the days when she takes the girls for the visits, Chianna makes excuses to go home. On one occasion, Chianna returned with a bottle of Mountain Dew that appellants had given her. Michelle also testified that the girls are involved in play groups, swimming lessons, and other family activities and that they have begun to thrive.
Tracy Bruno, the early intervention specialist, also testified regarding the progress that the girls have made while living with Michelle and Scott C. Bruno stated that when she first saw Sierra on January 30, 2001, her limbs were extremely stiff, which is a characteristic that is consistent with prenatal exposure to alcohol. Because of the stiffness, she was seen regularly by a occupational therapist and has made great progress. She further testified that the foster parents had followed through with every recommendation given to them and she attributed the girls' progress to the foster parents.
In addition to the testimony of the witnesses, the trial court considered the report and recommendation of the guardian ad litem in reaching a decision in this matter. The guardian ad litem reported that the girls were thriving in the foster home and were well cared for. Pamela and Brad, however, had been evicted from several homes and had been in and out of shelters, had been inconsistent in their visits with the children, showed inappropriate parenting when they did visit the girls and could not even meet their own needs let alone those of two toddlers. The guardian ad litem recommended that permanent custody of the girls be awarded to LCCS.
On January 14, 2002, the lower court filed a judgment entry which included findings of fact, conclusions of law and an order terminating Pamela C. and Brad F.'s parental rights and granting permanent custody of Chianna and Sierra to LCCS. In pertinent part, the court found that appellants were offered anger management classes, domestic violence counseling, parenting classes, diagnostic assessments, a psychological evaluation for Pamela and visitations with the girls to allow them to remedy the conditions which initially caused the removal of Chianna and Sierra from their custody. The court then found that Pamela refused to follow through with a psychiatric evaluation, refused medication and was unable to focus on the issues presented in the classes she attended. Similarly, the court found that Brad did not complete services and was not able to focus on the issues he needed to address. The court found that both Pamela and Brad spent much time blaming the system for their situation. The court further found that appellants' visitation with their children was poor and that their interaction with the girls was also poor. Finally, the court found that an incident of domestic violence in October 2001 and reports that both appellants had recently abused alcohol indicated that appellants had failed to remedy the conditions which initially caused the removal of the children from their custody.
Based on these findings, the court concluded that following the placement of the girls outside their home and notwithstanding reasonable case planning and diligent efforts by LCCS to assist appellants to remedy the problems that initially caused the girls to be placed outside their home, appellants had failed continuously and repeatedly to substantially remedy the conditions causing the girls to be placed outside their home. The court further concluded that Pamela has a chronic mental/emotional illness which is so severe that it makes her unable to provide an adequate permanent home for the children at the present time and within one year after the date of the hearing and that appellants had demonstrated a lack of commitment toward their children. Accordingly, the court concluded that Chianna and Sierra cannot and should not be placed with either parent within a reasonable time.
In considering the best interest of the children, the court stated that it had considered the placement history of the girls, and the interaction and interrelationship of the girls with their parents and in the foster home. The court then concluded that it was in the best interest of Chianna and Sierra for permanent custody of them to be awarded to LCCS. Accordingly, the court granted LCCS permanent custody of Chianna and Sierra. It is from that judgment that appellants now appeal.
Because appellants' assignments of error are interrelated, they will be addressed together.
The disposition of a child determined to be dependent, abused or neglected is controlled by R.C. 2151.353 and the court may enter any order of disposition provided for in R.C. 2151.353(A). However, before the court can grant permanent custody of a child to the agency, the court must determine: 1) pursuant to R.C. 2151.414(E) that the child cannot or should not be placed with one of his parents within a reasonable time; and 2) pursuant to R.C. 2151.414(D) that the permanent commitment is in the best interest of the child. R.C. 2151.353(A)(4). R.C. 2151.414(E) provides that, in determining whether or not a child can or should be placed with a parent within a reasonable time, the court shall consider all relevant evidence. If, however, the court determines by clear and convincing evidence that any one of sixteen factors listed in the statute exist, the court must find that the child cannot be placed with the parent within a reasonable time. Those factors include:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code.
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
"* * *
"(16) Any other factor the court considers relevant."
Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954), 161 Ohio St. 469. In determining the best interest of the children, R.C. 2151.414(D) directs that the court shall consider all relevant factors, including but not limited to:
 "(1) The interaction and interrelationship of the child[ren] with the child[ren]'s parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child[ren];
 "(2) The wishes of the child[ren], as expressed directly by the child[ren] or through the child[ren]'s guardian ad litem, with due regard for the maturity of the child[ren];
 "(3) The custodial history of the child[ren], including whether the child[ren] [have] been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child[ren]'s need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child[ren]."
In their first assignment of error, appellants assert that the trial court erred in finding that LCCS made a good faith effort to reunify appellants with their children. Accordingly, appellants challenge the trial court's conclusion that Chianna and Sierra cannot and should not be placed with either parent within a reasonable time. In support of that conclusion, however, the trial court not only made the R.C. 2151.414(E)(1) finding, but also made findings pursuant to R.C. 2151.414(E)(2) and (4). Clear and convincing evidence of but one of the R.C. 2151.414(E) factors is necessary to support a finding that the children cannot and should not be placed with either parent.
In their second assignment of error, appellants assert that the trial court order granting permanent custody of the girls to LCCS was against the manifest weight of the evidence. As stated above, the proper standard in cases reviewing the termination of parental rights is whether there was clear and convincing evidence to support the trial court's conclusion.
After thoroughly reviewing the record in this case, we conclude that the trial court's findings that Chianna and Sierra cannot and should not be placed with either parent within a reasonable time and that permanent custody was in the children's best interest were supported by clear and convincing evidence. Despite the numerous services offered to appellants by LCCS, appellants did not fully complete those services, did not gain any insight into their problems from the services that they did attend, and were inconsistent in their visits with Chianna and Sierra. The trial court did not err in awarding LCCS permanent custody of Chianna and Sierra.
Accordingly, the first and second assignments of error are not well-taken.
On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellants.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Melvin L. Resnick, J., and Mark L.Pietrykowski, P.J., CONCUR.